PENICK *et al. v.* HIGH SHOALS MANUFACTURING CO.

1. Where the proviso in an act of the General Assembly is repugnant to the body of the act, the latter will prevail.
2. A tax-collector who is attempting to collect an amount claimed to be due for taxes upon property which is not required by law to be returned for taxation in the county in which he holds his office, and which has been lawfully returned for taxation in another county, is proceeding without authority of law, and may be restrained by injunction at the instance of the person from whom the amount is sought to be collected.

Argued May 3,—Decided May 24, 1901.

Equitable petition. Before Judge Hart. Morgan superior court. September 7, 1900.

An execution for State and county taxes for the year 1899 on the property of the High Shoals Manufacturing Company was issued by the tax-collector of Morgan county and levied by the sheriff; and the company, by petition for injunction, sought to prevent the collection of the tax, contending that no part of its property was subject to taxation in Morgan county, and that it was subject to be taxed only in Walton county, where taxes for that year on the whole of its property had been paid. The company is a corporation chartered by the superior court of Walton county, and engaged in the business of manufacturing cotton into thread and cloth, by means of water-power and steam, and its property consists of a tract of land in the two counties named and in Oconee county, and of buildings and other property of the kind usually owned or employed by a corporation of that character. The office of the corporation and the dye-house used in the manufacture of colored goods, and several houses occupied as homes by its operatives, are on that part of the tract which is in Walton county. The mill buildings proper are mainly, if not wholly, in Morgan county; according to some of the evidence in the record they are wholly in that county, but according to other evidence the boundary line between these two counties passes through the main building. A warehouse in which cotton was stored is on the Morgan county part of the tract. The water-power is partly in each county, but chiefly in Oconee county. The defendants demurred to the petition, and contended that the judiciary has no authority to restrain the collection of taxes. The demurrer was overruled, and to this they excepted. The court,

over the objection of the defendants, allowed the plaintiff to intro-
duce evidence as to what part of the property was in each of the
counties, the objection being that its situation was a question for
decision by the tax-collector, and, he having decided the question
when he issued the execution, the plaintiff could not in this way
go behind the decision; also evidence that the property was returned
for taxation for the year 1899 in Walton county, and that the taxes
had been paid to that county, this being objected to as irrelevant.
The court refused to allow the defendants to show the amount and
value of cotton which the plaintiff had in its warehouse in Morgan
county, February 1, 1899. Each of the rulings stated is assigned
as error. At the conclusion of the evidence the court, after stating
that the case turned upon the construction to be given the tax act
of 1898, § 8 (Acts 1898, p. 29), held that the plaintiff was not sub-
ject to the tax sought to be collected, and directed a verdict for
the plaintiff; and to this the defendants excepted.

　　*George & George* and *Foster & Butler*, for plaintiffs in error
　　*Henry D. McDaniel*, contra.

　　COBB, J.　The general tax act of 1898 contained the following pro-
visions: " The presidents of all manufacturing or other incorporated
companies, or their agents, other than railroad, insurance, telegraph,
telephone, express, sleeping and palace car companies, shall be re-
quired to return all their property whatever of their respective com-
panies at its true market value to the tax-receiver of the county
where the same is located, or where the principal business of such
company is located; *provided*, that if the real estate and machinery
and other personal property used in connection with the operation
thereof is located in a county different from that of the principal
office, then such real estate and machinery, and other personal prop-
erty connected therewith, shall be returned in the county where
located, and the money, notes, accounts, and other property subject
to taxation shall be returned in the county where the principal
place of business of each such companies is located." Acts 1898,
p. 29 (8). The body of the act distinctly provides that the president
of a manufacturing company, when he comes to return the property
of his company for taxation, may, at his option, return all of the
property of his company at the place where it is located, or, if he
sees proper to do so, he may return the same where the principal

.business of the company is located; the term "principal business" evidently being used to indicate the principal office of the company. Whether the property shall be returned where actually located, or whether it shall all be returned in the county where the principal office of the company is located, are questions which, according to the body of the act, are left to the determination of the president of the company. The proviso of the act declares that if the real estate, machinery, and other personal property, is located in a county different from that in which the principal office of the company is situated, then such property *shall* be returned in the county where located, and the money, notes, accounts, and other property subject to taxation *shall* be returned in the county where the principal office of the company is located. In the body of the act the president of the company is given the right to determine where he will return the property when the same is located in a county different from that in which the principal office of the company is situated. Under the proviso he has no right to determine this question. Property of a certain character is required to be returned in the county where it is located, and property of a certain other character is required to be returned in the county where the principal office of the company is located. The proviso and the body of the act are in conflict with each other. There is an irreconcilable repugnancy between the two. It is impossible to give effect to both the body of the act and the proviso. In the body the president is allowed to choose between two alternatives; in the proviso he has no right of choice.

In construing "saving clauses" and "provisos" where they are inconsistent with the body or purview of the act, some of the courts have drawn a distinction; but by far the larger number of authorities treat both alike. Among the latter is Chancellor Kent, who says: "But it may be remarked upon this case [naming a case holding the contrary view] that a proviso repugnant to the purview of the statute renders it equally nugatory and void as a repugnant saving clause; and it is difficult to see why the act should be destroyed by the one, and not by the other, or why the proviso and the saving clause, when inconsistent with the body of the act, should not both of them be equally rejected." 1 Kent's Com. *463. See also Sedg. Con. Stat. & Con. L. 47, 48; Dwarr. Stat. 118. We agree with these authorities that there is no good reason why an in-

consistent saving clause should give way to the body of the act, and a proviso repugnant to the body of the act should render the latter absolutely void. "A saving clause in a statute, where it is, directly repugnant to the purview or body of the act and can not, stand without rendering the act inconsistent and destructive of itself, is to be rejected." Sedg. Con. Stat. & Con. L. 47, and authorities cited. This was also the rule at common law. "A saving totally repugnant to the body of the act is void." 1 Black. Com. 195. This court has directly decided that where a proviso in an act is inconsistent with the purview, the latter must prevail. *Jackson* v. *Moye*, 33 *Ga.* 296. Applying these principles to the act under consideration, the proviso must be disregarded and the body of the act allowed to prevail.

It is true that as a general rule judicial interference with the collection of State taxes is forbidden, and that this rule is subject to few, if any, exceptions; many so-called exceptions being only apparent. *Decker* v. *McGowan*, 59 *Ga.* 807. As was said by Judge Bleckley in the case just cited: "For an officer to exact money under the name of a tax, when there is no law to warrant the exaction, is not an attempt to collect taxes, but an attempt to collect, something else; and the rule which excludes interference in the collection of taxes does not apply. The difference is that which exists between the absence of authority, and the mistaken or wrongful execution of an authority which has been duly conferred. If the officer is armed with a valid law, and confines himself within its limitations as to the rate and the objects of taxation, he is free from being impeded by the courts, whatever errors or abuses may happen. But if he thinks he has a law, or pretends to have, when in truth he has none, or if he disregards express limitations and restrictions, he is so far a mere wrong-doer, and can not take shelter under official cover. Upon principle, I should say that cases admitting of interference might be distinguished from those not admitting of it by this simple test: Conceding all the elements of fact to be as the officer decides them to be, or as favorable to him as possible, would his action be legal or illegal? If legal, no interference; if illegal, interference to the extent necessary for the citizen's protection." See also *Perkins* v. *State*, 101 *Ga.* 294. There was, at the time that the tax-collector of Morgan county attempted to collect the sum claimed to be due in that county as a tax from

the High Shoals Manufacturing Company, a law authorizing him to collect taxes upon all property located within the limits of the county ·which was required by law to be returned to the tax-receiver of that county, and also upon all property of manufacturing companies located therein, if the presidents of such companies had returned the same to the tax-receiver of the county, or if they had not returned the property to the tax-receivers of the counties where their principal offices were located. The principal office of the defendant in error was in Walton county, and a portion of its property was located in the county of Morgan. Consequently, before the tax-collector of Morgan county would have any authority to proceed to collect taxes upon property of that company located in that county, it must appear that the president of the company has not exercised the right which the law gives him to return the entire property for taxation in Walton county. And if it does appear that he has exercised this right within the time allowed by law for making returns of property, then the tax-receiver of Morgan county has no right to treat the company as a tax defaulter, and the tax-collector of that county has no right to collect any amount ·from it as taxes on the property located therein.

*Judgment affirmed. All the Justices concurring.*